**Anna Sortun,** OSB No. 045279
  Direct Dial: 503.802.2107
  Fax: 503.972.3807
  E-Mail: anna.sortun@tonkon.com
**TONKON TORP LLP**
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204

**Robyn C. Crowther**, Bar No. 193840  *(pro hac vice application anticipated)*
  *crowther@caldwell-leslie.com*
**Kelly Perigoe**, Bar No. 268872  *(pro hac vice application anticipated)*
  *perigoe@caldwell-leslie.com*
**CALDWELL LESLIE & PROCTOR, PC**
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040

    Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Portland Division)

| | |
|---|---|
| EVOX PRODUCTIONS LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>CHROME DATA SOLUTIONS, LP, a Delaware company; CHROME SYSTEMS INC., a Delaware corporation; DOES 1-10,<br><br>    Defendants. | Civil No. 3:16-cv-57<br><br>**COMPLAINT**<br><br>1. **CONTRIBUTORY AND/OR VICARIOUS COPYRIGHT INFRINGEMENT**<br><br>2. **BREACH OF CONTRACT**<br><br>3. **BREACH OF CONTRACT AND CONTRACTUAL INDEMNITY**<br><br>4. **ACCOUNTING**<br><br>5. **DECLARATORY RELIEF**<br><br>*(Demand for Jury Trial)* |

PAGE 1 -  COMPLAINT

Plaintiff EVOX Productions LLC ("EVOX"), by its attorneys, Caldwell Leslie & Proctor, PC, alleges, with personal knowledge as to its own actions, and upon information and belief as to those of others, as follows:

## INTRODUCTION

1. EVOX creates and licenses high-quality, photographic digital images and computer generated digital images of substantially all automotive makes and models commonly sold in the United States since model year 2000. EVOX is the leading creator of automotive image libraries ("AIL") in the United States, and its images are widely recognized as the best in its field. EVOX owns the copyrights in hundreds of thousands of photographic digital images and computer generated digital images. EVOX's images are widely used by its customers on websites and in mobile applications whose purpose is to market the automobiles that are portrayed in the EVOX images.

2. In 2003, EVOX and Defendant Chrome Systems, Inc. ("Chrome Systems") entered into the Copyright License Agreement (the "Agreement"), which allowed Chrome Systems to sublicense EVOX's AIL to approved sublicensees in exchange for paying EVOX fees based upon sublicensees' uses of AIL. For years, Chrome Systems breached the Agreement by significantly underreporting the license fees owed to EVOX from at least two of its sublicensees, and failing to pay EVOX millions of dollars in fees due under the agreement. More egregiously, Chrome Systems and its successor in interest, Defendant Chrome Data Solutions, LP ("Chrome Data"), have breached the Agreement by refusing EVOX's requests to audit their records to determine if other underreporting exists.

/ / /

3.    Along a similar vein, Chrome Systems had agreed to protect EVOX's intellectual property and to use the AIL consistently with EVOX's standards.  Chrome Systems and, later, Defendants, violated their obligations to EVOX by allowing, on information and belief, numerous sublicensees to infringe EVOX images.  For example, EVOX has recently learned that Potratz Partners Advertising, Inc. ("Potratz"), a New York company, has distributed at least 53,318 of EVOX's copyrighted photographs, notwithstanding that it did not have a license with EVOX and was not an approved sublicensee.  Instead, Chrome purported to "license" EVOX's images to Potratz, without ever obtaining EVOX's approval and without paying the license fees to EVOX that would have been due under the Agreement.  As alleged herein, Potratz is just one of several such unapproved sublicensees which Chrome allowed to infringe EVOX's images.  EVOX has suffered significant financial harm based on Defendants' conduct of which it is aware.  It is also bringing an accounting claim to determine how much more damage has been done without its knowledge.

## PARTIES

4.    EVOX is a Delaware limited liability company with its principal place of business in Rancho Dominguez, California.

5.    EVOX is informed and believes, and on that basis alleges, that Defendant Chrome Systems is a Delaware corporation with its principal place of business in Portland, Oregon.

6.    EVOX is informed and believes, and on that basis alleges, that Defendant Chrome Data is a Delaware company with its principal place of business in Portland, Oregon.  EVOX is further informed and believes, and on that basis alleges, that Chrome Data is a joint venture that was created in December 2011 by the merger of Chrome Systems and Autodata Solutions, Inc.,

and that the partnership is owned equally by third parties DealerTrack and Autodata Solutions, a subsidiary of Internet Brands.

7. EVOX is unaware of the true names and capacities of Does 1 through 10, and therefore sues these Defendants by these fictitious names. EVOX will amend this complaint to allege the Doe Defendants' true names and capacities when they become known to EVOX.

8. EVOX is informed and believes that, in performing the acts or omissions described in this Complaint, Defendant and Does 1 through 10 were acting as the principal, representative, agent, employee, or alter ego of each other and were acting within the scope of such agency or employment to commit the acts alleged herein. Each Defendant sued herein aided and abetted the other with the intent that each would be successful in their mutual endeavors. Each Defendant contributed to EVOX's damages and the statutory violations alleged herein.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the action for the infringement of United States copyrights pursuant to 17 U.S.C. § 501 et seq. and 28 U.S.C. §§ 1331 and 1338(a); 42 U.S.C. § 9613(g)(2), providing jurisdiction over declaratory relief actions; and 28 U.S.C. § 1367(a), providing supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution

10. This Court has personal jurisdiction over Defendants because, *inter alia*, EVOX is informed and believes that Defendants regularly conduct and have conducted business in this District by, among other things, supplying products and services in this District. Additionally, Defendants' conduct has occurred in this District, and has caused and continues to cause EVOX

to suffer harm in this District. Moreover, according to its website, Chrome Data has a nationwide presence, including: (a) most United States vehicle manufacturers use Chrome Data products; (b) more than 90 percent of the largest fleet companies in North America use Chrome Data content; (c) 17,000 dealerships use Chrome Data content to help them sell new and used vehicles; (d) 6,000 websites use Chrome Data content; and (d) 1,000 financial institutions use Chrome Data information as part of making vehicle loans.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, *inter alia*, (a) Defendants are doing business within this District; and (b) Defendants' acts or omissions giving rise to this lawsuit, as well as substantial injury to EVOX, have occurred and will continue to occur in interstate commerce, in this District.

## GENERAL ALLEGATIONS

### *EVOX's Intellectual Property*

12. EVOX owns the copyrights in hundreds of thousands of digital images and photographs under the United States Copyright laws, and has obtained Certificates of Copyright Registration from the Register of Copyrights for these works. Each copyright registration includes multiple still images for the title automobile, including "Exterior Spins" viewable through commonly available third party software. The automobiles and the federally registered copyrights which Defendant have infringed by the acts complained of herein include, without limitation, the copyrighted photographs listed in Exhibit "1" to the Complaint (the "Copyrighted Photographs").

13. EVOX has spent substantial time, money, and talent in connection with the production, development and marketing of the Copyrighted Photographs.

14. EVOX also owns trademark registrations, including the following United States Patent and Trademark Office ("PTO") trademark registration (the "EVOX Trademarks").

| Trademark | Registration No. | Goods/services |
| --- | --- | --- |
| EVOX | 3,765,883 | Photography, audio and video recording services in the field of automotive imaging in international class 41 |
| EVOX IMAGES | 3,649,661 | Stock photography services, namely, leasing reproduction rights of photographs and transparencies to others in international class 45 |

15. The EVOX Trademarks are registered on the Principal Register of the PTO pursuant to 15 U.S.C. § 1051, and these registrations are valid, subsisting, and enforceable.

16. EVOX has developed a very successful business licensing its library of copyrighted automotive photographs. EVOX has used the EVOX Trademarks in connection with its advertising, promotion, sale, and offering for sale of its products and services nationwide. EVOX's products and services are known and recognized by the EVOX Trademarks.

17. EVOX has used the EVOX mark and trade name continuously since 1995 nationwide, in interstate commerce, either alone or in conjunction with other words and marks, to identify EVOX as the source of high quality goods and services in its field.

18. EVOX has used the EVOX IMAGES mark continuously since 2006 nationwide, in interstate commerce, either alone or in conjunction with other words and marks, to identify EVOX as the source of high quality goods and services in its field.

/ / /

PAGE 6 - COMPLAINT

### *EVOX's Sublicensing Agreement with Chrome Systems*

19. On October 6, 2003, EVOX and Chrome Systems entered into the Agreement, through which EVOX granted Chrome Systems "a nonexclusive, nontransferable limited copyright license" to use images in EVOX's automotive image library ("AIL"), as well as the right to sublicense the AIL. (A true and correct copy of the Agreement is attached hereto as Exhibit "2.")

20. Paragraph 2.2 of the Agreement states that "Sublicenses by [Chrome Systems], as authorized by this Agreement, shall contain terms and conditions no less protective of EVOX's rights than those set forth by EVOX in this Agreement."

21. Paragraph 2.1 of the Agreement requires Chrome Systems to "use the AIL consistently with EVOX's standards."

22. Paragraph 3.2 of the Agreement requires Chrome Systems to "keep commercially reasonable records of its hosting and use of the AIL, and of all sublicensing in accordance with generally accepted accounting principles, consistently applied."

23. The Agreement also required Chrome Systems to submit to EVOX a complete report of its net revenues, including information regarding the markets in which EVOX products were used, within fifteen days after the end of each calendar month. (Agreement, ¶ 3.4.) Under the Agreement, EVOX had the right to hire an independent auditor to verify sales figures relevant to this Agreement and, in the event that Chrome Systems "had underreported sales figures by more than five percent (5%) in any period," Chrome Systems had to reimburse EVOX for all audit costs. (Agreement, ¶ 6.6.)

24. Under Paragraph 9.4 of the Agreement, Chrome Systems agreed to defend and indemnify EVOX "against any loss, cost, damage, liability or expense (including reasonable

attorneys' fees) suffered or incurred by EVOX in connection with any negligent act or omission of" Chrome Systems, "including but not limited to . . . infringement . . . of EVOX's intellectual property rights," and further agreed that in the event of a breach of the proprietary rights provision of the Agreement, EVOX would be entitled to all remedies available at law or in equity and that EVOX would be entitled to recover its attorneys' fees and costs.

25.  Although the Agreement otherwise would have expired on February 15, 2008, EVOX and Chrome Systems entered into a series of side letters that permitted Chrome Systems to continue to supply EVOX products to Chrome Systems' sublicenses, subject to all the terms and conditions of the Agreement.

### *Infringement of EVOX's Intellectual Property*

26.  In or around April 2013, EVOX discovered that a third-party, Potratz, was using EVOX images without having sought or purchase a license from EVOX to use the Copyrighted Photographs. At no time has EVOX ever granted a license to Potratz to use the Copyrighted Photographs. EVOX is informed and believes that Potratz has distributed at least 53,318 of EVOX's Copyrighted Photographs to the public without EVOX's consent.

27.  At all times relevant to the claims asserted herein, EVOX did not consent to or authorize Potratz's use and/or distribution of EVOX's Copyrighted Photographs and to the extent consent to such use had previously been given, any such consent had expired.

28.  Potratz's unlawful and unauthorized distribution, transmission, copying, public display and use of the Copyrighted Photographs has irreparably harmed EVOX's copyrights and exclusive rights in the Copyrighted Photographs.

29.  After EVOX learned of Potratz's infringement, and the extent of it, EVOX contacted Potratz to demand that it cease and desist such infringing uses. As part of these

communications, Potratz informed EVOX that it believed it had a license from Chrome Data to use the images.

30. Chrome has failed to pay EVOX the fees associated with Potratz's use of EVOX images that would have been due under the Agreement had Potratz been an approved sublicensee.

31. On information and belief, beginning no later than January 2013, Chrome made EVOX's Copyrighted Photographs available to additional entities including but not limited to Beechmont Motors and DealerSocket, Inc. (collectively and with Potratz, the "Unauthorized Sublicensees") without the contractually requisite authorization from EVOX and/or after such authorization had expired.  On information and belief, these acts by Chrome allowed for and resulted in the unauthorized use of EVOX's Copyrighted Photographs by the Unauthorized Sublicensees and/or Chrome's underreporting of and underpayment for such uses by such Unauthorized Sublicensees.

32. The Unauthorized Sublicensees' unlawful and unauthorized distribution, transmission, copying, public display and use of the Copyrighted Photographs has irreparably harmed EVOX's copyrights and exclusive rights in the Copyrighted Photographs.

### *Underreporting of Sublicensing Fees*

33. EVOX is informed and believes that Chrome Systems has significantly underreported the fees of at least two, and potentially more, sublicensees.

34. As set forth above, Potratz has distributed at least 53,318 of EVOX's Copyrighted Photographs to the public, and Chrome Systems has failed to properly report these uses and has not paid EVOX its share of the sublicense fees that are attributable to these uses.

/ / /

35.     As set forth above, on information and belief, Chrome Systems has failed to properly report uses of EVOX's Copyrighted Photographs by the Unauthorized Sublicensees and has not paid EVOX its share of the sublicense fees that are attributable to these uses.

36.     Chrome Systems has significantly underreported in at least one other circumstance. In or around 2005, Chrome Systems entered into a sublicense agreement with a third party Gabriels Technology Solutions, Inc. ("GTS") by which GTS paid sublicense fees to Chrome Systems to use EVOX images.

37.     On February 6, 2013, EVOX filed a lawsuit against GTS in the United States District Court for the Central District of California, captioned *EVOX Productions, LLC v. Gabriels Technology Solutions, Inc.*, Case No. CV13-00846, alleging claims for copyright infringement, contributory copyright infringement, trademark infringement, unfair competition, and two Lanham Act claims. After the lawsuit was filed, EVOX learned that GTS and Chrome Systems had significantly underreported licensing fees for the period of 2005 to 2010 by, *inter alia*,

(a)  paying the lowest possible fee for a package of 11 still photos, which ranges in price from $110 to $350 per month, depending on the size of the website on which the image appears, when GTS in fact should have paid the most expensive fee for access to the full set of AIL, which ranges from $630 to $2,430 per month, depending on the size of the website;

(b)  by paying lower fees for the use of AIL in small or medium websites when, in fact, most of the websites were in the "largest" category and subject to higher fees; and

(c)  for underreporting use of EVOX images on as many as 100 websites.

38.     EVOX estimates that, over the course of 2005 to 2010, GTS's license fees were underreported by close to $3 million.

PAGE 10 - COMPLAINT

39.     Under the Agreement with EVOX and Chrome Systems, Chrome Systems was required to pay EVOX between 60 to 85 percent of its net revenues, including sublicense fees. Between 2005 and 2010, Chrome Systems paid EVOX approximately $85,000 —a fraction of the millions of dollars in GTS sublicense fees that Chrome Systems owed EVOX.

40.     Chrome Systems breached its duties to EVOX under the Agreement by underreporting GTS's sublicense fees and failing to pay to EVOX the 60 to 85 percent of the actual amount of sublicense fees.

41.     EVOX did not learn about Chrome Systems' underreporting until 2014, and could not have learned of it before that time because the information was solely within the possession of Defendants and GTS, and Defendants and GTS actively concealed the underreporting in an effort to avoid paying EVOX the millions of dollars it was due.

42.     GTS was not the only sublicensee of Chrome Systems in the period in question. Accordingly, on or around May 13, 2015, EVOX provided written notice to Defendants of its request to exercise its audit rights under the Agreement in order to ascertain whether any other sublicense fees had been underreported.  As of the date of filing, Defendants have not responded to this written request.

### *EVOX's Compliance with Paragraph 11.2 of the Agreement*

43.    Pursuant to Paragraph 11.2 of the Agreement, on or about October 26, 2015, counsel for EVOX sent a letter to Defendants to Chrome Systems to notify Chrome Systems of EVOX's potential claims against Defendants and to initiate alternative dispute resolution procedures as set forth in Paragraph 11.2.

44.    Following the October 26, 2015 letter, counsel for EVOX and counsel for Defendants engaged in amicable discussions in an attempt to resolve the parties' dispute.

PAGE 11 - COMPLAINT

45. Pursuant to Paragraph 11.2 of the Agreement, counsel for EVOX has requested that the parties submit to mediation of their dispute. As of the filing of this complaint Defendants have not agreed to participate in a mediation.

46. Notwithstanding that the parties have not yet engaged in a mediation, EVOX has filed the instant complaint in order to preserve its claims in the face of Defendants' unwillingness to enter into an effective tolling agreement pending the parties' efforts at alternative dispute resolution.

## FIRST CAUSE OF ACTION

**(Contributory and/or Vicarious Copyright Infringement)**

**(Against All Defendants)**

47. EVOX hereby incorporates by reference each and every allegation contained above, as though set forth herein in full.

48. Each of the Copyrighted Photographs is an original pictorial work and constitutes copyrightable subject matter under 17 U.S.C. §§ 101 and 102.

49. During all times relevant to this complaint, the Unauthorized Sublicensees were not, and are not, licensed or otherwise authorized to distribute, transmit, copy, or display the Copyrighted Photographs.

50. The Unauthorized Sublicensees have infringed EVOX's copyrights the Copyrighted Photographs through the distribution, transmission, copying, or public display of the Copyrighted Photographs on their own websites and on the websites of certain car dealerships.

51. EVOX is informed and believes, and on that basis alleges that Defendants, and each of them, knowingly induced, participated in, aided and abetted in, and profited from the Unauthorized Sublicensees' infringements of the Copyrighted Photographs.

52. EVOX is informed and believes, and on that basis alleges that Defendants, and each of them, are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

53. Due to Defendants' acts of infringement, EVOX has no adequate remedy at law and is entitled to injunctive relief pursuant to 17 U.S.C. § 502(a) and impoundment of infringing goods pursuant to 17 U.S.C. § 503(a).

54. By reason of the Defendants' acts of contributory and vicarious infringement, EVOX has suffered and will continue to suffer substantial damages to its business, as well as additional general and special damages, in an amount to be established at trial.

55. Due to Defendants' acts of infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for the infringement of EVOX's copyrights. EVOX is thus entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of EVOX's copyrights in an amount to be established at trial or to statutory damages as provided by Section 504(c)(1) for non-willful infringement.

56. In the alternative, EVOX is informed and believes, and on that basis alleges that Defendants' acts of infringement were willful, intentional and malicious, which further subjects Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act, 17 U.S.C. § 504(c)(2), in the sum of up to one hundred fifty thousand dollars ($150,000) per infringement of each registered copyrighted work.

57. EVOX is also entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

/ / /

## SECOND CAUSE OF ACTION

### (Breach of Contract)

### (Against All Defendants)

58. EVOX hereby incorporates by reference each and every allegation contained above, as though set forth herein in full.

59. EVOX and Chrome Systems entered into a valid written contract, the Agreement, which was executed by the parties on or about October 6, 2003. After the Agreement's expiration date, the parties entered into a series of side letters by which they agreed to be bound by the terms of the Agreement throughout the relevant time period.

60. EVOX fulfilled and/or performed all conditions, covenants, and promises required on its part in accordance with the terms and conditions of the Agreement except for those conditions, covenants, obligations, and promises that were waived, excused, or prevented by Chrome Systems.

61. Chrome Systems materially breached the Agreement by, *inter alia*, (a) failing to submit appropriate records of sublicense fees, (b) underreporting sublicense fees, (c) not paying EVOX the full extent of sublicense fees, and (d) failing to protect EVOX's intellectual property.

62. EVOX did not learn about Chrome Systems' underreporting until 2014, and could not have learned of it before that time because the information was solely within the possession of Defendants and sublicensees, and Defendants and sublicensees actively concealed the underreporting in an effort to avoid paying EVOX the millions of dollars it was due.

63. EVOX has suffered damages as a direct and proximate result of Chrome System's breaches of the Agreement in a sum to be proved at trial.

/ / /

64. Chrome Data is also liable for these damages as the successor in interest to Chrome Systems and because, on information and belief, it is an alter ego of Chrome Systems. EVOX is informed and believes that Defendants, for the purpose of attempting to shield themselves from liability or responsibility for wrongful acts committed in furtherance of their business activities, created, or caused to have created separate entities for the purpose of improperly trying to avoid their lawful obligations. EVOX is informed and believes that Defendants have, among other things, failed to treat each other as separate entities, commingled their funds and assets, held out the other as liable for their own debts, used the same offices and employees, and used one as a mere shell or conduit for the affairs of the other. Unless Chrome Data is treated as an alter ego of Chrome Systems, injustice will result to EVOX.

## THIRD CAUSE OF ACTION

**(Breach of Contract and Contractual Indemnity)**

**(Against All Defendants)**

65. EVOX hereby incorporates by reference each and every allegation contained above, as though set forth herein in full.

66. EVOX and Chrome Systems entered into a valid written contract, the Agreement, which was executed by the parties on or about October 6, 2003. After the Agreement's expiration date, the parties entered into a series of side letters by which they agreed to be bound by the terms of the Agreement throughout the relevant time period.

67. EVOX fulfilled and/or performed all conditions, covenants, and promises required on its part in accordance with the terms and conditions of the Agreement and the Amendment except for those conditions, covenants, obligations, and promises that were waived, excused, or prevented by Chrome Systems.

68.     Under Paragraph 9.4 of the Agreement, Chrome Systems agreed to defend and indemnify EVOX "against any loss, cost, damage, liability or expense (including reasonable attorneys' fees) suffered or incurred by EVOX in connection with any negligent act or omission of" Chrome Systems, "including but not limited to . . . infringement . . . of EVOX's intellectual property rights," and further agreed that in the event of a breach of the proprietary rights provision of the Agreement, EVOX would be entitled to all remedies available at law or in equity and that EVOX would be entitled to recover its attorneys' fees and costs.

69.     Chrome Data is also liable for these damages as the successor in interest to Chrome Systems and because, on information and belief, it is an alter ego of Chrome Systems. EVOX is informed and believes that Defendants, for the purpose of attempting to shield themselves from liability or responsibility for wrongful acts committed in furtherance of their business activities, created, or caused to have created separate entities for the purpose of improperly trying to avoid their lawful obligations. EVOX is informed and believes that Defendants have, among other things, failed to treat each other as separate entities, commingled their funds and assets, held out the other as liable for their own debts, used the same offices and employees, and used one as a mere shell or conduit for the affairs of the other. Unless Chrome Data is treated as an alter ego of Chrome Systems, injustice will result to EVOX.

70.     Pursuant to the Agreement, Defendants are obligated to indemnify EVOX for damages incurred as a result of underreporting by Chrome Systems' sublicensees, as well as the infringement of EVOX's intellectual property rights. These damages include attorneys' fees and costs incurred by EVOX.

71.     Despite due demand, Defendants have refused to reimburse EVOX for damages incurred to date as a result of underreporting by Chrome Systems regarding its sublicensees, as

well as the infringement of EVOX's intellectual property rights.  As a result of Defendants' failure to accept their obligations in this regard, EVOX has suffered and is continuing to suffer damages, including without limitation attorneys' fees and costs and other monetary damages.

## FOURTH CAUSE OF ACTION

### (Accounting)

### (Against All Defendants)

72.     EVOX hereby incorporates by reference each and every allegation contained above, as though set forth herein in full.

73.     EVOX and Chrome Systems entered into a valid written contract, the Agreement, which was executed by the parties on or about October 6, 2003.  The Agreement provided to EVOX the right to audit Chrome Systems books and records to determine Chrome Systems' net revenues earned from sublicensees.

74.     On or around May 13, 2015, EVOX provided written notice to Defendants that it wished to exercise its audit rights under the Agreement.

75.     Defendants have failed to respond to EVOX's written notice and have not made available all relevant information for EVOX's review.

76.     As a result of the aforementioned, Defendants have received revenues related to EVOX's images, a portion of which is due to EVOX.  The amount of money due from Defendants to EVOX is unknown to EVOX and cannot be ascertained without an accounting of all relevant information necessary to verify Defendants' sales figures, including but not limited to receipts and payments from sublicensees.

/ / /

/ / /

77. EVOX has demanded an accounting of the aforementioned transactions from Defendants and payment of the amount due, but Defendants have failed and refused, and continue to fail and refuse, to render such an accounting and pay such sum.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief)

### (Against All Defendants)

78. EVOX hereby incorporates by reference each and every allegation contained above, as though set forth herein in full.

79. An actual controversy has arisen between EVOX and Defendants concerning the parties' rights and obligations under the Agreement. EVOX contends that it has complied with the alternative dispute resolution procedures in Paragraph 11.2 of the Agreement. Defendants dispute that contention.

80. EVOX is entitled to a declaration from this Court that EVOX has complied with Paragraph 11.2 of the Agreement and/or that it is excused from complying with Paragraph 11.2 of the Agreement by Defendants' failure to comply with same.

## PRAYER FOR RELIEF

**WHEREFORE**, EVOX prays for judgment and relief as follows:

1. For the First Cause of Action, for an award at EVOX's election, pursuant to 17 U.S.C. § 504, of either (1) the actual damages suffered by EVOX with respect to past infringement, plus any additional profits of Defendants that are attributable to the infringement that are not taken into account in computing the actual damages; or (2) statutory damages as provided by Section 504(c)(1).

/ / /

2. In the alternative, for the First Cause of Action, for a finding that the Defendants' infringement was willful, and for an award to EVOX, at its election, of statutory damages against Defendants for willfully committing infringement as provided by 17 U.S.C. § 504(c)(2);

3. For the First Cause of Action, for an order that Defendants account for all sales, revenues, costs and profits from their wrongful conduct and unauthorized use of EVOX's Copyrights, and that Defendants pay EVOX damages in an amount to be proven at trial, but including Defendants' profits and actual damages suffered by EVOX as a result of Defendants' wrongful acts;

4. For the Second Cause of Action, for actual damages in an amount above the jurisdictional minimum, in an amount to be proved at trial;

5. For the Third Cause of Action, for indemnification as appropriate for damages incurred as a result of underreporting by Chrome Systems' sublicensees, including attorneys' fees and costs incurred by EVOX;

6. For the Fourth Cause of Action, for an accounting between EVOX and Defendants, and for the amount found to be due from Defendants to EVOX as a result of that accounting;

7. For the Fifth Cause of Action, for a declaration that EVOX has complied with Paragraph 11.2 of the Agreement and/or that it is excused from complying with Paragraph 11.2 of the Agreement by Defendants' failure to comply with same.

8. For injunctive relief;

9. For attorneys' fees and costs of suit herein incurred as permitted by law;

/ / /

/ / /

10. For pre-judgment interest at the maximum legal rate; and

11. For such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff demands a jury trial on all issues raised in this Complaint triable to a jury.

DATED this 13th day of January, 2016.

TONKON TORP LLP

By: /s/ Anna Sortun
Anna Sortun, OSB No. 045279
Direct Dial: 503.802.2107
Fax: 503.972.3807
E-Mail: anna.sortun@tonkon.com

CALDWELL LESLIE & PROCTOR, PC
Robyn C. Crowther, Bar No. 193840
  *(pro hac vice application anticipated)*
  crowther@caldwell-leslie.com
Kelly Perigoe, Bar No. 268872
  *(pro hac vice application anticipated)*
  perigoe@caldwell-leslie.com
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040

Attorneys for Plaintiff

080000/02107/6950298v1

PAGE 20 - COMPLAINT