IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVOX PRODUCTIONS LLC, a
Delaware limited liability company,

   Plaintiff,

  v.

CHROME DATA SOLUTIONS, LP,
a Delaware company,

   Defendants.
_____

Case No. 3:16-cv-00057-JR

FINDINGS  AND
RECOMMENDATION

RUSSO, Magistrate Judge:

  Defendant Chrome Data Solutions, LP ("Chrome") moves for summary judgment on

plaintiff Evox Productions LLC's ("Evox") claims pursuant to Fed. R. Civ. P. 56. Oral argument

was held on February 18, 2021. For the reasons set forth below, Chrome's motion should be

granted, and this case should be dismissed.

Page 1 – FINDINGS AND RECOMMENDATION

# BACKGROUND[1]

The history of this matter is well known to all parties and therefore will only be recounted to the extent relevant to the present dispute. See, e.g., Evox Prods. LLC v. Chrome Data Sols., LP ("Evox I"), 2018 WL 6059530 (D. Or. Sept. 6), adopted by 2018 WL 6059372 (D. Or. Nov. 16, 2018); Evox Prods. LLC v. Chrome Data Sols., LP ("Evox II"), 2019 WL 3495848, *1 (D. Or. June 26), adopted by 2019 WL 3467858 (D. Or. July 31, 2019).

Evox creates and licenses photographic and computer-generated digital images of almost all automobiles sold in the United States since 2000. Evox's images are widely used by its customers on websites and in mobile applications whose purpose is to market automobiles.

In 2003, Evox entered into a copyright licensing agreement ("Agreement") with Chrome, allowing Chrome to sublicense Evox's copyrighted images to third parties. Thompson Decl. Ex. 12 (doc. 157-25). Chrome, in turn, created mapping tables[2] of Evox's images that it shared with customers and paid the requisite percentage of revenue fees to Evox based on third-party usage. Id.; Arledge Decl. Ex. A, at 5-11 (doc. 157-20); Thompson Decl. ¶ 2 (doc. 157-24).

In 2008, after a series of amendments extending its term, the parties allowed the Agreement to expire, after which they entered into a series of letter agreements. Ledahl Decl. Exs. 1-2 (doc. 150); Thompson Decl. ¶ 4 (doc. 157-24). These letter agreements, and in some cases informal emails between the parties, established different termination dates for Chrome's sublicenses to

---

[1] The Court cites to Chrome's evidence except when referring to the non-duplicative information produced by Evox, and to the docket numbers of the parties' declaration exhibits except where individually labelled and numeralized.

[2] Mapping tables are not Evox property and neither contain Evox images nor provide access to them; they merely list the Evox photograph file names that correspond to particular vehicle configurations as identified in Chrome's data products. Jess Decl. ¶ 5 (doc. 152).

Evox's copyrighted photographs. Arledge Decl. Ex. B, at 14-17 (doc. 157-21); Thompson Decl. ¶¶ 4, 6-10 (doc. 157-24).

On January 13, 2016, Evox filed a complaint in this Court, alleging that Chrome breached the Agreement by failing to pay the full amount of sublicense fees owed and protect its intellectual property. Evox also alleged a claim for vicarious or contributory copyright infringement because Chrome "knowingly induced, participated in, aided and abetted in, and profited from Unauthorized Sublicensees' infringements of the Copyrighted Photographs." Compl. ¶ 51 (doc. 1).

On January 26, 2018, Chrome moved for summary judgment on basis that Evox's claims were time-barred. On November 16, 2018, the Court granted Chrome's motion in part. See generally Evox I, 2018 WL 6059530. Specifically, the Court dismissed Evox's breach of contract claims as outside the statute of limitations. Id. at *11-14. The Court held that Evox's remaining copyright infringement claims were untimely to the extent they were based on Chrome's alleged acts that occurred before January 13, 2014. Id. at *15-17.

On December 27, 2018, at the parties' request, the Court entered an order lifting the discovery stay and resetting pretrial deadlines. On May 24, 2019, Evox moved to file an amended complaint in light of Chrome's representation it intended to move for summary judgment due to the lack of any allegations of infringing conduct within the relevant time frame. On July 31, 2019, the Court granted Evox's motion to amend. See generally Evox II, 2019 WL 3495848. Evox filed its amended complaint on August 14, 2019, alleging that three former authorized licensees – i.e., iPublishers, Potratz Partners Advertising, Inc. ("Potratz"), and Webnet/DealerDNA ("Webnet") – continued to use its copyrighted images with Chrome's knowledge and permission after Chrome's sublicense rights had expired. In particular, Chrome's right to sublicense to Potratz "expired on or

before September 30, 2013," and Chrome's right to sublicense to any other customer "expired by no later than November 30, 2014." First Am. Compl. ¶ 21 (doc. 123).

On December 11, 2020, Chrome filed the present motion for summary judgment as to Evox's remaining claims for contributory and vicarious copyright infringement.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T. W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T. W. Elec., 809 F.2d at 630.

**DISCUSSION**

Chrome asserts summary judgment is warranted because "Evox has failed to make a showing sufficient to establish the existence of each element [of its claims] as to each of the alleged third-party infringers." Def.'s Mot. Summ. J. 1-4 (doc. 149). In regard to iPublishers and Potratz, Chrome maintains that Evox has not identified any direct, vicarious, or contributory infringement after January 13, 2014 (i.e., within the relevant limitations period). Concerning Webnet, Chrome contends Evox has not identified any direct, vicarious, or contributory infringement after December 1, 2014 (i.e., after Webnet's allegedly valid sublicense expired).

Evox opposes Chrome's motion arguing there is evidence of infringement regarding each third party in the form of: (1) emails from Chrome extending the period for iPublishers "to migrat[e] to Chrome's images from EVOX's images" through July 2014; (2) emails from Chrome acknowledging the existence of "inactive [Evox] products" on Potratz's website through 2015; and (3) billing statements from Chrome invoicing Webnet for "eVOX Package Sets" through November 2014. Pl.'s Resp. to Mot. Summ. J. 10-15 (doc. 157). Additionally, Evox argues "[t]he relevant date for infringement for statute of limitations purposes should be January of 2013, not January of 2014," and that the third-party sublicences "ended . . . by 2011 at the latest." Id. at 3-9, 15-21.

I.    **Preliminary Issues**

The Court must resolve three preliminary issues before reaching the merits of Chrome's motion: the parties' evidentiary objections, the dispositive time frame for plaintiff's copyright infringement claims, and the dispositive time frame for Chrome's relevant sublicenses.

A.    **Evidentiary Objections**

Chrome objects to the declarations of Michael Del Monte (Evox's "consultant") and Barry Thompson (Evox's Vice President of Compliance), and the exhibits attached thereto. According to Chrome, Thompson's declaration is "self-serving and conclusory" as it relates to the expiration dates of the third-party sublicenses. Def.'s Reply to Mot. Summ. J. 18 (doc. 158). Chrome maintains that "Mr. Del Monte is a witness specially retained by Evox to provide opinion testimony" but was not properly disclosed under Fed. R. Civ. P. 26(a)(2). Id. at 13-14. Essentially, Chrome's objection stems from the fact that Del Monte's testimony is not admissible under Fed. R. Evid. 702 or, alternatively, Fed. R. Evid. 1002.

Evox filed a surreply, in which it responded to Chrome's objections in accordance with Local Rule 56-1(b) and also raised its own evidentiary objections in relation to "defendant's new evidence" – i.e., the supplemental declarations of Brian Ledahl (Chrome's counsel) and Roger Jess (Chrome's Vice President of Content Operations & Portland Region), and the documents attached thereto – because they "were not produced as part of Chrome's moving papers" and "EVOX has not had a full and fair opportunity to respond to these materials."[3] Pl.'s Surreply 1-3 (doc. 162). Regarding the former, Evox asserts Del Monte is offering lay testimony within the purview of Fed. R. Evid. 701 and "need not offer a screen capture as evidence to prove what existed on the websites in question," just "as a witness need not include a photograph of an event in order to testify as to what he or she witnessed." Id. at 4-5. Evox contends further that Thompson's declaration does not

---

[3] Because Local Rule 56-1(b) permits a surreply solely to respond to the moving party's evidentiary objection, Chrome requested, and the Court granted, leave to file a three-page sur-surreply. See generally Def.'s Sur-Surreply (doc. 164). The parties also had the opportunity to explore these matters at oral argument.

proffer impermissible legal conclusions and instead "explain[s] EVOX's understanding of the parties' agreement." Id. at 5-6.

### i.    Chrome's Objections

Initially, this Court "is capable of independently resolving conflicts in the record and questions of admissibility, and therefore declines to strike the evidence at issue." Cascadia Wildlands v. Bureau of Land Mgmt., 2012 WL 6738275, *3 n.6 (D. Or. Dec. 21, 2012). Stated differently, the Court is not bound by either party's (or their witness') characterization of the evidence and instead independently reviews the record to determine whether summary judgment is appropriate. However, as addressed below, the Court does not rely on Thompson's legal conclusions to the extent they are not borne out by the factual record.

Concerning Del Monte, the Court agrees with Evox that his declaration does not qualify as expert testimony, such that Rule 702 is inapplicable. Rule 701 governs lay opinion testimony:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

In interpreting this rule, courts have indicated that a witness' specialized knowledge does not automatically convert him or her into an expert. See Bank of China v. NBM LLC, 359 F.3d 171, 181 (2d Cir.2004) ("[t]he fact that [the witness] has specialized knowledge, or that he carried out the investigation because of that knowledge, does not preclude him from testifying pursuant to 701, so long as the testimony was based on the investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise"). Further, where a witness with specialized knowledge provides percipient testimony about matters that are

"'common enough to require . . . a limited amount of expertise," his or her testimony falls with Rule 701. United States v. Figueroa-Lopez, 125 F.3d 1241, 1245 (9th Cir.1997) (citations and internal quotations omitted).

"The question, of course, becomes where to draw the line as to what constitutes a common enough matter [and] [w]here the Ninth Circuit stands is not entirely clear." Sec. & Exchange Comm'n v. Sabhlok, 2010 WL 2944255, *5 (N.D. Cal. July 23, 2010). Nevertheless, for the purposes of this case, the Court need not precisely define the parameters of Rules 701 or 702 because Del Monte's testimony is limited to his first-hand perceptions. In particular, Del Monte's declaration and attachments offer sworn statements about his role in auditing Potratz's and Webnet's servers (and websites associated with Webnet) and what he personally observed during that process. See Morin v. State Farm Fire & Cas. Co., 453 F.Supp.2d 173, 175-76 (D. Me. 2006) (witness with specialized knowledge could testify as to the "facts he observed during the course of his investigation" under Rule 701).

Finally, Rule 1002 has limited pertinence to Del Monte's personal observations. United States v. Bennett, 363 F.3d 947, 953 (9th Cir. 2004) ("best evidence rule" is "inapplicable when a witness merely identifies a photograph or videotape as a correct representation of events which he saw or of a scene with which he is familiar"). Whether the data referenced in Del Monte's declaration and the attached 2013 and 2015 reports falls within the ambit of Rule 1002 poses a closer question, especially to the extent these reports are introduced to prove the content of that data and, by extension, third-party infringement. Del Monte Decl. Ex. 59 (doc. 157-32); Del Monte Decl. Ex. 60 (doc. 157-33); see also Bennet, 363 F.3d at 953 (testimony about data retrieved from a GPS was barred by the "best evidence rule" because it had been introduced to prove the contents of the GPS, which, in turn, was evidence that the defendant had violated the law).

In any event, as addressed herein, the consideration of Thompson's and Del Monte's declarations does not alter the outcome of this case. See Perez-Denison v. Kaiser Found. Health Plan of the N.W., 868 F.Supp.2d 1065, 1088-89 (D. Or. 2012) (denying an evidentiary objection as moot where "the evidence moved against does not change the [court's] recommendation" regarding summary judgment). For this additional reason, the Court declines to strike this evidence. Chrome's objections are denied.

> ### ii.      Evox's Objections

The Court finds Evox's objections somewhat disingenuous given the content of the record. Notably, the need for Chrome to address the term of the third-party sublicenses did not arise until Evox filed its opposition and substantially pivoted from its pleadings, on which Chrome's moving papers were premised. See Pl.'s Resp. to Mot. Summ. J. 7 (doc. 157) (acknowledging that "Chrome's entire [summary judgment] argument hinges on the language in [paragraph 21] of the FAC"); Hearing (Feb. 18, 2021) (same). It is well established that the court may consider evidence, even new evidence, that rebuts arguments raised by the plaintiff in its opposition to the defendant's summary judgment motion. See, e.g., Sec. & Exchange Comm'n v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1087 n.9 (9th Cir. 2010); United States v. Taibi, 2012 WL 553143, *4 (S.D. Cal. Feb. 21, 2012); Arch Ins., Co. v. Nizar & Nuha Kalbi Family Tr., 610 Fed.Appx. 622, 623 (9th Cir. 2015).

Moreover, Evox was familiar with the evidence underlying Jess' and Ledahl's supplemental declarations, as it was produced during discovery. The fact that Evox simply ignored this evidence in responding to Chrome's motion does constitute prejudice. This is especially true given that Evox had the opportunity to address Jess' and Ledahl's supplemental declarations via its surreply and at the February 18, 2021, hearing. See Or. Nat. Desert Ass'n v. Cain, 17 F.Supp.3d

1037, 1048 (D. Or. 2014) (non-moving party's surreply constitutes a sufficient opportunity to respond to new evidence). Evox's objections are denied.

**B.    Dispositive Time Period for Claims**

According to Evox, the November 2018 Opinion and Order erroneously concluded "that the parties contractually agreed to change the limitations period for copyright claims" from three years to two years. Pl.'s Resp. to Mot. Summ. J. 15 (doc. 157). In support of this argument, Evox posits: (1) "[a]greements to shorten limitations periods are disfavored and are to be narrowly construed"; (2) "[t]he parties did not clearly and explicitly agree to modify the limitations period for infringement claims"; and (3) Judge Papak's "F&R does not explain how any provision shortening the limitations period – even if it existed in the contract, and it does not – could survive forever after the agreement's termination." Id. at 16-21. As a result, "this Court should modify its earlier ruling to clarify that any infringing acts after January 14, 2013 are at issue." Id. at 15.

Thus, Evox seeks reconsideration of the Court's prior ruling under Fed. R. Civ. P. 59(e).[4] See Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc., 5 F.3d 1255, 1262-63 (9th Cir. 1993) (reconsideration is appropriate under Fed. R. Civ. P. 59(e) if: (1) the district court is presented with newly discovered evidence, committed clear error, or the initial decision was manifestly unjust; (2) there is an intervening change in controlling law; or (3) "other, highly unusual, circumstances" are present); see also Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 530 (9th Cir. 2000)

---

[4] Evox invokes the "clear error" standard but relies on similar arguments used in opposing and objecting to Chrome's first summary judgment motion. Compare Pl.'s Resp. to First Summ. J. Mot. 6-11 (doc. 83); Pl.'s Objs. 21-24 (doc. 104); with Pl.'s Resp. to Mot. Summ. J. 15-21 (doc. 157); but see United States v. Westlands Water Dist., 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001) ("motions to reconsider are not vehicles permitting the unsuccessful party to rehash arguments previously presented . . . Nor is a motion to reconsider justified on the basis of new evidence which could have been discovered prior to the court's ruling").

("a judge may set aside or reverse a prior ruling by a colleague in the same case" only if "cogent reasons or exceptional circumstances exist").

As an initial matter, the Court finds Evox's request – made more than two years after Judge Papak's Findings and Recommendation was adopted – untimely. See Fed. R. Civ. P. 59(e) ("[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment").[5] Regardless, after reviewing Judge Papak's well-reasoned rulings concerning the limitations period, the Court does not find any modification is warranted. In relevant part, Judge Papak explained:

> The Ninth Circuit has noted that enforcing a copyright license agreement "raises issues that lie at the intersection of copyright and contract law." MDY Indus., LLC v. Blizzard Entm't, 629 F.3d 928, 939 (9th Cir. 2010). The Ninth Circuit explained that for a plaintiff to recover "for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution)." Id. at 940 . . . Here, EVOX alleges that Chrome committed copyright infringement by improperly allowing or facilitating current or former sublicensees' access to EVOX's copyrighted images [such] that this court could not resolve the merits of EVOX's copyright claim without interpreting the Agreement to determine the scope of the license EVOX granted to Chrome. Because EVOX's copyright infringement claim arises out of the Agreement, I conclude that the Agreement's two-year limitation period applies to EVOX's copyright infringement claim.

Evox I, 2018 WL 6059530 at *16.

While Evox maintains that Judge Papak ignored Ninth Circuit precedent, it does not cite to a single case directing a different outcome or that post-dates the November 2018 Opinion and Order. But see Gravestone Entm't LLC v. Maxim Media Marketing, Inc., 2019 WL 3578471, *2

---

[5] Because plaintiff does not specifically invoke one the subsections enumerated in Fed. R. Civ. P 60(b), the Court does not find that rule applicable here. See Backlund v. Barnhart, 778 F.2d 1386, 1388 (9th Cir. 1985) (denying a motion for reconsideration where the moving party "did not argue that their case falls within any of [the six] exceptions" outlined in Fed. R. Civ. P. 60(b)). Even so, plaintiff's delay of more than two years does not qualify as a "reasonable time" given the particular circumstances of this case.

(D. Ariz. Aug. 6, 2019) (copyright infringement claims based on the defendant's "continu[ed] distribut[ion] [of] the films following the termination of the licensing agreement . . . fall within the scope" of that agreement for the purposes of determining the applicability of an arbitration clause). Evox also ignores the portions of its brief that explicitly argue that Chrome's actions were wrongful based on its construction of the parties' contractual licenses. See Pl.'s Resp. to Mot. Summ. J. 8 (doc. 157) (describing "the date that Chrome's right to sublicense to these customers ended" as "critical"); see also Oracle Am. Inc. v. Hewlett Packard Enter. Co., 971 F.3d 1042, 1051 (9th Cir. 2020) ("[a]n applicable license may be dispositive of an infringement claim," such that the "court must construe the license to evaluate its effect on a claim of copyright infringement").

Finally, Section 13.5 of the Agreement clearly and unequivocally states: "No action, regardless of form, arising out of this Agreement may be brought by either Party more than two years after the cause of action arose." Thompson Decl. Ex. 12, at 10 (doc. 157-25). Given these circumstances, the Court declines to depart from the November 2018 Opinion and Order, and the dispositive limitations period remains from January 13, 2014, forward.

### C.    Dispositive Time Period for Sublicenses

In moving for summary judgment, Chrome accepted the dates of the sublicensing agreements alleged in Paragraph 21 of the First Amended Complaint and proffered specific arguments based thereon. Def.'s Mot. Summ. J. 7 n.3 (doc. 149). In particular, Chrome argued there is no evidence of Potratz/iPublishers or Webnet's infringement after December 2013 and November 2014, respectively. Evox's opposition characterizes the First Amended Complaint as intentionally "equivocal on this point" and now contends that the third-party sublicenses actually expired much earlier – namely, iPublishers' "expired no later than June 15, 2009"; Webnet's

"ended no later than August [15], 2011"; and Potratz's "ended no later than August 21, 2010." Pl.'s Resp. to Mot. Summ. J. 5-7 (doc. 157).

The Court denotes that belated efforts to refine ill-defined pleadings are generally disfavored. See Wasco Prods., Inc., v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) ("summary judgment is not a procedural second chance to flesh out inadequate pleadings") (citation and internal quotations omitted). It is also worth noting that, in granting Evox's motion to amend, the Court accepted Evox's representation "that Chrome's right to supply Evox's products to Potratz expired on September 30, 2013 [and] all other sublicense rights expired no later than November 30, 2014." Evox II, 2019 WL 3495848 at *4-5; see also Pl.'s Objs. 20 (doc. 104) (maintaining "that Potratz was an authorized Chrome sublicensee through June 2013" in objecting to Judge Papak's summary judgment ruling). Evox made no objection to the Court's Findings and Recommendation, either in regard to the fact that Chrome purportedly did not have sublicense rights after 2011 or otherwise. See Fed. R. Civ. P. 72(a) ("[a] party may not assign as error a defect in the order not timely objected to"); see also New Hampshire v. Maine, 532 U.S. 742, 749-51 (2001) (a party may not take a clearly inconsistent litigation position in subsequent proceedings to gain an advantage). Further, in light of the applicable limitations period, any purported infringement prior to January 13, 2014, is not actionable.

In any event, it is undisputed that the last formal letter agreement, from June 2009, extended the term of service for Chrome's existing licensees through August 15, 2009. Ledahl Decl. Ex. 2 (doc. 150); Thompson Decl. ¶ 10 (doc. 157-24). In addition, Evox stipulated that "the intent 'to allow Chrome to service existing licensees' shall include the right for Chrome to renew or extend the [listed] sublicenses [including Webnet] upon their normal expiration date for a period not to

exceed 12 months. Such renewals shall be subject to all terms and conditions of the existing Agreement." Ledahl Decl. Ex. 2 (doc. 150).

As Evox itself acknowledges, the parties thereafter continued to negotiate term extensions that would have allowed Chrome to continue servicing certain sublicenses for additional periods. Pl.'s Resp. to Mot. Summ. J. 9 (doc. 157); Thompson Decl. ¶¶ 8-10, 13, 15 (doc. 157-24); Suppl. Jess Decl. ¶ 2 (doc. 161). To that end, the record reflects that Evox approved the renewal of sublicense rights for iPublishers and Potratz in August 2009 for another 12 months. Ledahl Decl. Ex. 4 (doc. 150); Ledahl Decl. Ex. 3 (151); Thompson Decl. ¶ 14 (doc. 157-24).

In March 2011, the parties drafted another letter agreement clarifying that, as of December 15, 2010, "the intent 'to allow Chrome to service existing licensees' shall specifically mean the right for Chrome to service only the existing sublicenses listed [including Webnet] until their next normal expiration date." Thompson Decl. Ex. 58 (doc. 157-30). In regard to a separate subset of listed licensees, including iPublishers, "the intent 'to allow Chrome to service existing licensees' shall also include the right for Chrome to renew or extend [them] upon their normal expiration date for a period not to exceed 12 months and in all events shall cease . . . on December 31, 2012." Id. However, it is undisputed that this letter agreement was never executed, such that Chrome continued to service its existing licensees in accordance with the Agreement and Evox's implicit consent.

Notably, in July 2013, Chrome sent Evox a list of then-current sublicensees; this document explicitly lists iPublishers, Potratz, and Webnet, and Evox's subsequent correspondence evinces no objection to the inclusion of these third parties as authorized users. Suppl. Ledahl Decl. Ex. 1 (doc. 160). Chrome also sent Evox reports that included payment to Evox for: (1) Potratz's sublicense rights through July 2013; (2) iPublishers' sublicense rights through March 2014; and

(3) Webnet's sublicense rights through November 2014. Suppl. Jess Decl. ¶¶ 2-4 & Exs. 1-2 (doc. 161).

It is therefore undisputed that Evox acknowledged Chrome's sublicenses with each third-party long after the termination dates it now proffers and received contemporaneous reports of usage and renumeration based thereon. As a result, the letter agreements attached to Thompson's declaration[6] are not determinative given that they predate the aforementioned events and Evox concedes the parties had a history of extending sublicense terms informally on a "customer-by-customer basis." Thompson Decl. ¶¶ 4, 13 (doc. 157-24); see also Scott v. Harris, 550 U.S. 372, 380 (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").

Relatedly, that Evox relied on Chrome's reports regarding third-party image usage "without attempting to verify their reliability" and "did not" scrutinize them carefully does not excuse Evox's failure to object to the third-party utilization of its images after the letter agreements allegedly lapsed. Thompson Decl. ¶ 3 (doc. 157-24). Thompson's legal conclusions regarding the

---

[6] Chrome's employees, including Jess, testified that the parties understood the Agreement and letter agreements to allow Chrome to extend or renew existing Evox sublicenses indefinitely in 12-month terms unless and until terminated. See, e.g., Arledge Decl. Ex. 6 (doc. 157-3); Arledge Decl. Ex. A, at 3-8 (doc. 157-20); Arledge Decl. Ex. B, at 2-4, 12-23 (doc. 157-21); Suppl. Jess Decl. ¶ 2 (doc. 161). While this issue is not central to Chrome's motion, the plain language of the letter agreements themselves, especially when viewed in conjunction with the parties' course of conduct over several years, lends credence to Chrome's interpretation. See DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford, 868 F.Supp.2d 1042, 1053 (D. Or. 2011) (an enforceable contract does not necessarily require a formal written agreement or "'meeting of the minds,' as long as the parties' intent to enter into a contract can be shown through . . . communications and overt acts") (citations and internal quotations omitted); see also Pamfiloff v. Giant Records, Inc., 794 F.Supp. 933, 938-39 (N.D. Cal. 1992) ("a 'nonexclusive' [copyright] license can be granted orally or implied from conduct"). For instance, the unexecuted March 2011 letter agreement is the first and only written correspondence between the parties that references an ultimate termination date for each existing sublicensee.

proper interpretation of the parties' agreements and emails, and ultimate expiration date of the third-party sublicenses, are equally unavailing. Id. at ¶¶ 7, 11-14; see also Bogner v. R & B Sys., Inc., 2011 WL 1832750, *3 (E.D. Wash. May 12, 2011) (court "is not bound by [a declarant's] legal conclusions"; disputed issues of material fact can "not [be] created by simply averring that an act 'was [a legal violation or]' declaring that one's versions of events is 'consistent' with one's theory of the case . . . declarations [must only be considered] for the facts contained therein"). In sum, the Court relies on the parties' contemporaneous communications and overt acts in determining whether the third-party conduct exceeded the scope of Chrome's sublicences.

## II.    Summary Judgment Analysis

To establish contributory infringement, the plaintiff must show that the defendant has knowledge of another's direct infringement and either intentionally induces or encourages that infringement. Evox II, 2018 WL 6059530 at *15 (citations and internal quotations omitted). To demonstrate vicarious infringement, the plaintiff must show that the defendant had "(1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." Id. (citations and internal quotations omitted); see also Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1075 (9th Cir. 2007) ("in general, contributory liability is based on the defendant's failure to stop its own actions which facilitate third-party infringement, while vicarious liability is based on the defendant's failure to cause a third party to stop its directly infringing activities").

Thus, secondary liability requires proof of both direct copyright infringement by a third party and the defendant's legal responsibility for such infringement. See Perfect 10, 508 F.3d at 1069 ("[s]econdary liability for copyright infringement does not exist in the absence of direct infringement by a third party") (citation and internal quotations omitted). Direct infringement, in

turn, requires ownership of a valid copyright and violation by the direct infringer of at least one of

the owner's exclusive rights under 17 U.S.C. § 106 – i.e., reproduction, preparation of derivative

works, distribution by rental or lease, and public display. A&M Records, Inc. v. Napster, Inc., 239

F.3d 1004, 1013 (9th Cir. 2001) (as amended); 17 U.S.C. § 106(1)-(3), (5).

### A.    iPublishers

Chrome relies on Thompson's deposition testimony reflecting Evox did not have evidence

that anyone at iPublishers copied, distributed, publicly displayed, or created derivative works with

respect to any Evox image after January 1, 2014.[7] Ledahl Decl. Ex. 7, at 16-18, 174-76, 181 (doc.

150). In fact, Thompson admitted that Evox had "no Ten Max work or any other consultant work

or any internal work on iPublishers' use during or after the term" of their valid sublicense with

Chrome. Id. at 180; see also Thompson Decl. ¶ 18 (doc. 157-24) (Thompson implicitly

acknowledging that, when he personally searched for Evox's images online in 2015, he did not

find any infringing content on iPublishers' website).

In contrast, Evox has set forth evidence indicating that iPublishers continued to utilize its

images within the limitations period (but not necessarily in excess of its sublicense). Initially,

Chrome extended the term of iPublishers' sublicense through early 2014 while it migrated away

from Evox's images. Arledge Decl. Exs. 22-24, 51 (doc. 157). Yet an email exchange from March

---

[7] Evox takes issue with Chrome's reliance on Thompson deposition testimony because it "was
supposed to be limited to a single, very narrow issue: the facts surrounding a couple of documents
that EVOX produced and Chrome argued were produced late," and he "did not prepare to be
deposed on any issues outside of that narrow scope." See, e.g., Thompson Decl. ¶ 16 (doc. 157-
24). Evox, however, relies on Thompson's sworn statements concerning matters outside of the
purportedly late produced documents. See generally id. Furthermore, as Chrome observes, Evox
does not identify "any evidence that Mr. Thompson's testimony was incorrect" or "present any
evidence of infringement that Mr. Thompson supposedly forgot," and "Thompson himself [via his
declaration] fails to explain how his deposition testimony is in any way incorrect." Def.'s Reply
to Mot. Summ. J. 8-9 (doc. 158).

2014 revealed there had been a "miscommunication" regarding the migration, such that Evox's images were "still being accessed [because iPublishers] did not receive information on how to move/get the Chrome Media Gallery images." Arledge Decl. Ex. 52 (doc. 157-14). Accordingly, iPublishers requested, and Chrome granted, continued use of Evox's images through the beginning of June 2014. Arledge Decl. Exs. 27, 53 (doc. 157); Suppl. Jess Decl. Exs. 1-2 (doc. 161).

There is no additional evidence in the record before the Court concerning the scope of this use or access, or the public display/copying of Evox's copyrighted materials after March 2014, at which point Chrome was no longer reporting or paying for iPublishers' usage. But see Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 671 (2014) ("[e]ach time an infringing work is reproduced or distributed, the infringer commits a new wrong"). The Court notes that some precedent exists suggesting the availability of infringing material on a website is inadequate to establish unlawful distribution or dissemination, and Chrome makes much of the fact that Evox never identifies what copyright or copyrights were actually infringed by iPublishers. See, e.g., Arista Records, Inc. v. Mp3Board, Inc., 2002 WL 1997918, *4 (S.D. N.Y. Aug. 29, 2002); see also London–Sire Records, Inc. v. Doe 1, 542 F.Supp.2d 153, 176 (D. Mass. 2008) ("merely exposing music files to the internet is not copyright infringement"); Nat'l Car Rental Sys. v. Computer Assocs. Int'l, Inc., 991 F.2d 426, 434 (8th Cir.1993) ("[i]nfringement of the distribution right requires an actual dissemination of . . . copies") (citation and internal brackets and quotations omitted).

However, the Court need not resolve this issue because, even accepting that a reasonable jury could conclude iPublishers directly infringed on Evox's copyright after Chrome's sublicense ended, Evox nonetheless failed to meet its burden in regard to the remaining elements of its secondary liability claims. Although Evox broadly concludes that evidence of "Chrome's

knowledge of, participation in, and encouragement of the infringement is overwhelming," it does not actually provide any argument or evidence concerning these elements, or of Chrome's direct financial interest in the infringing activity, beyond that relating to the purported infringement itself. Pl.'s Resp. to Mot. Summ. J. 2, 10-15 (doc. 157).

In other words, Evox's brief is silent regarding critical aspects of its claims, despite Chrome specifically addressing and moving against those elements. Def.'s Mot. Summ. J. 8-23 (doc. 149); see also Justice v. Rockwell Collins. Inc., 117 F.Supp.3d 1119, 1134 (D. Or. 2015), aff'd, 720 Fed.Appx. 365 (9th Cir. 2017) ("if a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded") (citation and internal quotations and brackets omitted). This shortcoming is fatal to Evox's claims at this stage in the proceedings. See Celotex, 477 U.S. at 322 (summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden on proof at trial"); Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1116 (9th Cir. 2003) ("conclusory allegations, unsupported by facts, are insufficient to survive a motion for summary judgment").

Stated differently, plaintiff's failure to identify facts surrounding Chrome's legal responsibility for the alleged infringement is dispositive as to its secondary liability claims, especially in light of Chrome's unrefuted evidence that it had no right or ability to control iPublishers, and no knowledge of any unauthorized use of Evox images by iPublishers. Jess Decl. ¶ 9 (doc. 152); Kozlik Decl. ¶¶ 4, 8 (doc. 153); see also Ledahl Decl. Ex. 7, at 178-79 (doc. 150) (Thompson testifying that "Evox has never been able to develop a mechanism to track our photos after they leave the FTP"). The mere fact that Chrome did not object to iPublishers' request for an additional two months to migrate away from Evox's images does not evince intentional

inducement or encouragement. See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 936-37 (2005) (to be liable, the defendant must take affirmative steps to foster infringement: "mere knowledge of infringing potential or of actual infringing uses would not be enough"). Similarly, the fact that Chrome could have taken additional steps to supervise iPublishers after the expiration of the sublicense is irrelevant. See Luvdarts, LLC v. AT&T Mobility, LLC, 710 F.3d 1068, 1071-72 (9th Cir. 2013) (courts are to analyze secondary liability under the parties' existing system and set aside any arguments regarding how such a system could have been changed to increase supervision).

Finally, according to Chrome, it would have been financially harmed by any infringement of Evox's images. When Chrome sublicensed Evox images to a customer, the sublicensee paid Chrome, a portion of which was retained; the remaining portion was remitted to Evox. Jess Decl. ¶ 4 (doc. 152); Kozlik Decl. ¶ 5 (doc. 153); Suppl. Jess Decl. Exs. 1-2 (doc. 161). By 2014, Chrome offered its own images for license and charged customers directly for these services. Jess Decl. ¶ 7 (doc. 152); Kozlik Decl. ¶ 6 (doc. 153); Walls Decl. ¶ 14 (doc. 154). Chrome obtained no payment or other benefit from any unauthorized use of Evox's images and would further suffer a loss of revenue that might otherwise come from a sublicense either to Evox's images or its own library. Jess Decl. ¶¶ 6, 8, 10 (doc. 152); Kozlik Decl. ¶¶ 5, 7 (doc. 153); Walls Decl. ¶ 15 (doc. 154). Chrome's motion should be granted as to Evox's secondary liability claims based on iPublishers.

### B.    Potratz

There is no evidence of direct copyright infringement by Potratz within the relevant time period. The record reflects that Potratz's websites were actively using and linking to thousands of Evox's images as of April 2013. Ledahl Decl. Ex. 7, at 34-40, 47-48 (doc. 150); Ledahl Decl. Ex.

7A, at 1-3 (doc. 150); Del Monte Decl. ¶ 2 (doc. 157-31); Del Monte Decl. Ex. 59 (doc. 157-32). However, as specified in Section I(C), Evox received Chrome reports of Potratz's usage and accepted payment associated therewith through July 2013.

That fact that Del Monte performed a "quick search" at some unspecified time in 2015 revealing "the Potratz server was still hosting a large number of EVOX photographs" is insufficient to establish direct infringement within the relevant time frame. Del Monte Decl. ¶ 3 (doc. 157-31); see also Ledahl Decl. Ex. 7, at 39, 171-73, 177, 181 (doc. 150) (Thompson clarifying that Evox "didn't . . . have any evidence of web sites linking to [Potratz's] image server in 2015" or of Potratz copying, distributing, or displaying Evox's material after January 1, 2014). Neither the mere possession of nor hypothetical ability to access copyrighted materials is actionable under 17 U.S.C. § 106.

In sum, neither Thompson's and Del Monte's testimony, nor the reports Del Monte generated, reflect that any website actually linked to Potratz's image directory after 2013. This is especially true in light of the uncontradicted testimony of Paul Potratz, principal of Potratz, on which both parties rely. Consistent with the parties' contemporaneous email exchanges, Potratz testified that his company's access to Evox images ended no later than October 2013. Ledahl Decl. Ex. 8, at 111-13, 118-19 (doc. 151); Arledge Decl. Exs. 5-9 (doc. 157); Arledge Decl. Ex. C, at 27-58 (doc. 157-22). Potratz attributed any error in regard to the license termination date within Chrome's internal records to its "mess[y]" recordkeeping, which showed myriad inaccuracies. Ledahl Decl. Ex. 8, at 112-13 (doc. 151); Arledge Decl. Ex. 10 (doc. 157-7).

When Evox contacted him in 2015 to inquire whether the company retained any images, he responded that Potratz had made no use of Evox images – i.e., they "were not being leased, used or displayed by Potratz or any of Potratz clients" – since 2013. Ledahl Decl. Ex. 8, at 119-

22, 125-27 (doc. 151); Ledahl Decl. Exs. 11-12 (doc. 151). Potratz also indicated that, although he was "not aware the directory was accessible or even existed any longer," the company had since fixed the error. Ledahl Decl. Exs. 11-12 (doc. 151); see also VHT, Inc. v. Zillow Grp., Inc., 918 F.3d 723, 745-46 (9th Cir.), cert. denied, 140 S.Ct. 122 (2019) (evidence that the defendant "sometimes makes mistakes about the display rights in a feed [did not] plainly communicate an improper object of infringement," especially where the defendant "corrects these inadvertent errors when it learns of them").

The remaining portions of Evox's secondary liability claims relating to Potratz fail for the same reasons as its claims against iPublishers. See, e.g., Walls Decl. ¶¶ 4-7 (doc. 154). Chrome's motion should be granted in this regard.

### C.    Webnet

Unlike the other sublicensees, Evox purports to have a long list of copyrights allegedly infringed by Webnet. Ledahl Decl. Ex. 7, at 114-15 (doc. 150); Ledahl Decl. Ex. 7A, 4-238 (doc. 150). Specifically, Del Monte testified that he "found eight different dealer sites connected with [Webnet] that were using a total of 11,720 unique EVOX images as of August 2015," as well as "hundreds of thousands of unique EVOX images on a [Webnet] server." Del Monte Decl. ¶ 4 (doc. 157-31); Del Monte Decl. Ex. 60 (doc. 157-33).

As such, Del Monte does not intimate Webnet itself was displaying Evox's images after its sublicense ended, or that it even had awareness of or control over the eight dealer sites still using Evox's images. Id.; see also Ledahl Decl. Ex. 7, at 171-73, 181 (doc. 150) (Thompson acknowledging Evox had no evidence of direct infringement by Webnet or any site associated therewith after December 1, 2014). Nor has Evox shown that Chrome was empowered, either via the parties' underlying contract or otherwise, to stop or limit Webnet's past or current customers

from reproducing, displaying, and distributing infringing copies of Evox's images. And, as addressed above, the fact that Webnet possessed Evox's proprietary material on its server does not equate to direct infringement.

Nevertheless, presuming a disputed issue of material fact exists concerning whether Webnet directly infringed on Evox's copyrights during 2015, there is no evidence that Chrome knew of Webnet's purported infringement or induced/encouraged it. See, e.g., Walls Decl. ¶¶ 8-13 (doc. 154). Likewise, there is no evidence Chrome had the right and ability to supervise the allegedly infringing conduct and possessed a direct financial interest therein. Id. Once again, Evox's opposition is silent as to these issues. The only evidence that Evox has produced that even arguably relates to these elements is a Chrome invoice, dated November 25, 2014, billing Webnet for its use of five "Evox Package Sets." Arledge Decl. Ex. 54 (doc. 157-16).

Yet, as discussed in Section I(C), Chrome reported and remitted payment for these precise services to Evox, which Evox accepted. Therefore, consistent with paragraph 21 of the First Amended Complaint, the evidence demonstrates that Webnet's sublicense did not expire until December 1, 2014. Stated differently, this evidence does not establish any act by Webnet in excess of Chrome's sublicense. Chrome's motion should be granted as to Evox's secondary liability claims based on Webnet.

## RECOMMENDATION

Chrome's Motion for Summary Judgment (doc. 149) should be granted and judgment should be prepared dismissing this case. This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service

of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 24th day of February, 2021.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge